**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| ALISON FRIEND,<br><br>Plaintiff,<br><br>v.<br><br>THE PARTNERSHIPS AND UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE "A,"<br><br>Defendants. | Case No. 26-cv-05581<br><br>Judge Charles P. Kocoras<br><br>Magistrate Judge Beth W. Jantz |

**PLAINTIFF'S MOTION TO STAY BRIEFING ON DEFENDANTS' OPPOSITION [63] AND FOR LEAVE TO CONDUCT LIMITED FACT DISCOVERY**

Plaintiff, Alison Friend ("Friend" or "Plaintiff"), by undersigned counsel, respectfully moves this Court to stay briefing on Defendant Nos. 28 favomens.com and 29 lacemylife.com's (collectively, "Defendants") Opposition to Plaintiff's Motion for a Preliminary Injunction [63] and for leave to conduct limited fact discovery, so that Plaintiff may test the truth of Defendants' claims of minimal sales. In support, Plaintiff states as follows.

**BACKGROUND AND INTRODUCTION**

Friend is a full-time professional artist who creates humorous, anthropomorphic portraits of dogs and other animals, which are protected by United States copyright registrations (the "Alison Friend Works"). *See* Complaint [1] ¶ 5. At least two of those works are at issue here: U.S. Copyright Registration Nos. VA 2-388-391 and VA 2-413-118.

Defendants are two online storefronts which purport to be owned and operated by a single entity, Magic Matrix Technology, Co. Ltd. ("Magic Matrix"). Plaintiff is aware that Magic Matrix owns at least eight other websites which are not party to this suit. Despite repeated requests from Plaintiff's counsel, Defendants have yet to explain the full scope of Magic Matrix's operations,

including the total number of stores and payment processing accounts it owns, its business locations, its management and executive leadership structure, or the supplier and total inventory of the infringing products at issue.

Plaintiff filed this action on May 14, 2026 [1], and this Court entered a Temporary Restraining Order that, among other things, froze the PayPal accounts through which Defendants received funds for sales of the infringing products. [18]. On June 3, 2026, this Court granted the Parties' joint motion to modify the asset restraint, reducing the frozen funds to $10,000 per PayPal account until final disposition of the case. [36-37]. On June 4, 2026, this Court granted the Parties' joint motion for an extension of time for Defendants to file their opposition until June 25, 2026. [40].

On June 25, 2026, Defendants filed their Opposition [63], supported by the Declaration of Tang Jing [63-1] and a single-page "sales summary" [63-2], which includes illegible screenshots from an unspecified software application which has not been properly explained. On the strength of just those two documents, Defendants ask the Court to cut the asset restraint to "no more than $100," on the theory that they sold just three infringing shirts, two of which were test buys by Plaintiff's counsel. *See* [63] at 2–3; [63-1] ¶¶ 7, 9.

That request is premature, as Defendants' own admissions indicate that these two stores are part of a greater online retail operation. Defendants concede that Magic Matrix sells "more than 10,000 different products" through the storefronts at issue and others like them, [63-1] ¶ 3, and that "more than $1 million" has moved through the two PayPal accounts tied to these stores. *See* [53] at 1. Yet Defendants ask the Court to release everything above $100 without producing a single transaction record in support, accounting for those other 10,000 products, nor showing that any of the currently restrained funds or the seven figures in revenue they generated are free of

infringement. An asset freeze may be lifted only as to funds the defendant proves are the proceeds of non-infringing activity, and Defendants have proven nothing. Plaintiff is entitled to limited discovery to test that account before the restrained funds are released beyond reach.

## ARGUMENT

### I. Defendants' Untested Declaration Does Not Prove That the Frozen Funds Were Not the Result of Infringing Sales

"To exempt assets from an asset freeze, [t]he burden to present documentary proof that particular assets [are] not the proceeds of counterfeiting activities lies with the Defendant." *Gianni Versace, S.p.A. v. Zou Yulan*, No. 1:17-cv-07869, at *2 (N.D. Ill. Dec. 4, 2017); *see also Monster Energy Co. v. Wensheng*, 136 F. Supp. 3d 897, 910 (N.D. Ill. 2015). To carry it, a defendant must come forward with "something that shows the Court that the universe of potential [infringing] profits is less than what is currently frozen." *Johnson & Johnson v. Advanced Inventory Mgmt., Inc.*, No. 20-cv-3471, 2020 WL 8260381, at *5 (N.D. Ill. July 20, 2020). Ambiguous, unverified, or self-serving submissions do not suffice. *See H-D U.S.A., LLC v. Guangzhou Tomas Crafts Co.*, 2017 WL 6733685, at *6 (N.D. Ill. Dec. 18, 2017); *Luxottica USA LLC v. The Partnerships*, 2015 WL 3818622, at *4–5 (N.D. Ill. June 18, 2015).

In analogous cases, courts have required discovery to test the veracity of a defendant's claims before lifting an asset freeze. For example, in *Peanuts Worldwide, LLC v. Yingsheji Jiatingyongpinyouxiangongsi, et al.,* No. 21-cv-05863 (N.D. Ill., Jan. 24, 2022), the court allowed a preliminary injunction against the defendant without freezing its assets because it found that the defendant had "provided adequate documentary proof" of its assets which were "unrelated to the infringing activity at issue." *Id.* at *4. Specifically, the defendant had provided "a declaration from a corporate representative attesting to the numbers in a spreadsheet listing sales figures for all the products offered for sale by its Amazon seller account in 2021," as well as "pictures of products

to demonstrate that none of the other products it offered for sale infringed Plaintiff's trademarks or copyrights." *Id.*

In comparison, Defendants here offer a threadbare declaration and a one-page summary which purports to show only three sales. The screenshots of these sales are illegible, and Defendants do not explain how these screenshots were captured, from what software or system, or the methodology used to identify these sales. There are no PayPal records, no transaction logs, no product identifiers, no shipping or refund data, and no expense documentation. Moreover, Defendants offer nothing accounting for the 10,000-plus other products Magic Matrix admits selling through its various stores, including whether any of these other products also infringe Plaintiff's registered copyrights. That is exactly the kind of unverified, self-serving evidence courts in this District has repeatedly held insufficient to loosen a freeze. And where, as here, a defendant has commingled infringing and non-infringing proceeds, it "must abide the consequences, unless he can make a separation of the profits so as to assure to the injured party all that justly belongs to him." *Sheldon v. Metro-Goldwyn Pictures Corp.*, 309 U.S. 390, 406 (1940). Defendants concede the frozen balance is "attributable to many products sold…across many online platforms," Jing Decl. ¶ 4, but they do not list any of these other products or name the other platforms. On this record, Defendants have not and cannot meet their burden.

Magic Matrix, who owns and operates the Defendant websites, also manages an unknown number of other websites and sell thousands of other products. This presents unique challenges in verifying their sales and financial transactions. Unlike businesses operating on established e-commerce platforms like Amazon, where sales data is more readily accessible and subject to platform oversight, Defendants' operations as a series of standalone websites lack this layer of transparency and scrutiny. As a result, Defendants are the only entities that have access to

information about their sales and PayPal accounts. *See Johnson & Johnson*, 2020 U.S. Dist. LEXIS at *15-16 ("…the ball is in Defendants' court—they know from whom they purchased merchandise; what they paid for it; what they sold it for; how many bank accounts they have; whether Iaderosa is apt to flee to Dubai; and so on. It is their burden to come up with something that shows the Court that the universe of potential counterfeiting profits is less than what is currently frozen."). Further, Defendants have every motivation to hide or reduce the number of actual sales in order to minimize their liability. Plaintiff cannot independently verify Defendants' claims as this information is only in Defendants' custody, underscoring the need for proper discovery such sales transactions of all products sold, images of these products, and evidence of any and all customer payment methods which may not already be included in the asset restraint. *See Gianni Versace, S.p.A. v. Zou Yulan, et al.*, No. 1:17-cv-07869 at *2-3 (N.D. Ill. Dec. 4, 2017).

The prejudice Plaintiff may suffer if the funds were to be prematurely released is severe. *Klipsch Group, Inc. v. Big Box Store Ltd.*, No. 12-cv-6283 (S.D.N.Y.) is particularly instructive in illustrating that Defendants' representations of minimal counterfeit sales are inherently suspect. In *Klipsch Group*, an asset restraint was reduced based on the defendant's showing that there were minimal sales of accused goods sold into the United States. *Klipsch Group, Inc. v. Big Box Store Ltd.*, No. 12-cv-6283 (S.D.N.Y. Oct. 11, 2012) (Docket No. 67). However, the Court in *Klipsch Group* later found that the defendant had engaged in extensive willful spoliation of evidence, including deliberate wiping and erasure of sources of electronically stored information and deliberate destruction of electronic files. *Klipsch Group, Inc. v. Big Box Store Ltd.*, No. 12-cv-6283 (S.D.N.Y. August 8, 2014) (Docket No. 213). The Court subsequently increased the asset restraint to $5,000,000. *Id.* Therefore, in light of Defendants' conclusory statements and evasiveness regarding their operations and sales volume, the Court should give no weight to

Defendants' claims about their revenue and maintain the current asset restraint in place until Plaintiff can investigate through written and oral discovery.

## II. Courts in This District Routinely Grant Limited Discovery to Test Such Declarations Before Loosening an Asset Freeze.

This court has granted a similar motion in another Schedule "A" case, where the appearing defendants moved to dismiss and, as part of their briefing, "submitted several new affidavits" to carry the motion. *See Zinkia Entm't v. P'ships & Unincorporated Ass'ns Identified on Schedule "A",* No. 21-cv-00916, Dkt. #65, at 2 (N.D. Ill. June 1, 2021) (Kocoras, J.). The Court stayed its decision and granted the plaintiff leave to take discovery, holding that a party who advances such affidavits must afford its opponent "the opportunity to test" them "via . . . discovery," and that the standard for that testing "is low" wherever "the factual record is at least ambiguous or unclear." *Id.* (quoting *Ticketreserve, Inc. v. viagogo, Inc.*, 656 F. Supp. 2d 775, 782 (N.D. Ill. 2009)). *Zinkia* arose in the jurisdictional-discovery posture, but its logic is not so confined: a party that opposes relief by injecting its own sworn declarations cannot then shield that testimony from scrutiny. Defendants have done precisely that, staking their bid to gut the asset restraint on the untested Jing Declaration and a one-page summary of their own manufacture. Plaintiff is entitled to test both.

When confronted with incomplete and contested declarations on a motion to loosen an asset restraint, courts in this District deny modification and let the plaintiff test the evidence first. *See Antsy Labs, LLC v. Individuals*, 2022 WL 17176498, at *5 (N.D. Ill. Nov. 23, 2022) (denying modification "without prejudice" and declining to revisit the freeze until the defendant supplied "more reliable records"); *North Face Apparel Corp. v. TC Fashions, Inc.*, 2006 WL 838993, at *3–4 (S.D.N.Y. Mar. 30, 2006) (keeping the freeze in place where the parties disputed the sales numbers and profit margins).

That result follows from a basic principle: a declaration submitted to move the Court is testimony, and the opposing party is entitled to test it. In *Wham-O Holding, LTD. v. The Partnerships*, No. 22 C 0050 (N.D. Ill. 2022), the court granted the plaintiff's motion to stay and to conduct discovery, reasoning that the defendant's "written submission contain[ed] a declaration" amounting to testimony "the other side is entitled to an opportunity to test." The court reached the same conclusion in *Wham-O Holding, LTD. v. The Partnerships*, No. 20 C 4196 (N.D. Ill. 2020) ("you don't get to submit unquestioned evidence"); *accord Skechers U.S.A., Inc. II v. The Partnerships*, No. 24-cv-00596, Dkt. No. 93 (N.D. Ill. June 25, 2024); *Skechers U.S.A., Inc. II v. The Partnerships*, No. 24-cv-07333, Dkt. 144 (N.D. Ill. Dec. 10, 2025). Testing an untested declaration is the ordinary course, not extraordinary relief.

Crediting Defendants' untested figures now would reward the very gamesmanship the burden-shifting rule exists to prevent, and release of these funds would prejudice Plaintiff's statutory right to a full equitable accounting of Defendants' infringing profits. *See* 17 U.S.C. § 504(b). Limited fact discovery into Defendants' sales, financial accounts, product listings, suppliers, and the related websites and entities through which those sales were made will allow the Court to rule on the asset restraint upon a complete record rather than one-sided, unsubstantiated statements. Until Plaintiff has an opportunity to develop that record, briefing on Defendants' Opposition [63] should be stayed.

## CONCLUSION

Defendants admit they sell more than 10,000 products and that more than $1 million has passed through the PayPal accounts at issue, yet they ask this Court to release all but roughly $100 of the restrained funds without a single transaction record or ever showing that those products and proceeds are free of infringement. Defendants' have not carried the burden to prove which funds

are the proceeds of non-infringing activity, while simultaneously concealing the additional websites, accounts, and entities through which their sales flow. Plaintiff respectfully requests that the Court stay briefing on Defendants' Opposition [63] and grant Plaintiff leave to conduct limited fact discovery into Defendants' sales and complete transaction records, and the accounts, entities, and storefronts through which those sales were made.

DATED: July 10, 2026

Respectfully submitted,

*/s/ Keith A. Vogt*
Keith A. Vogt
FL Bar No. 1036084 / IL Bar No. 6207971
Keith A. Vogt PLLC
1820 NE 163rd Street, Suite #306
North Miami Beach, Florida 33162
Telephone: 312-971-6752
E-mail: keith@vogtip.com

***ATTORNEY FOR PLAINTIFF***

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing document was electronically filed on July 7, 2026, with the Clerk of the Court using the CM/ECF system, which will automatically send an email notification of such filing to all attorneys of record.

*/s/ Keith A. Vogt*
Keith A. Vogt