**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

---

**Alison Friend,**

Plaintiff,

Case No. 1:26-cv-05581

v.

**The Partnerships and Unincorporated Association Identified on Schedule "A"**

Defendants.

---

**MAGIC MATRIX REPLY IN SUPPORT OF MOTION TO DISMISS**

---

Dated: July 27, 2026

Michael T. Griggs
BOYLE FREDRICKSON S.C.
840 N. Plankinton Ave.
Milwaukee, WI 53203
mtg@boylefred.com

***Attorney for Defendants 28 and 29***

## I. Introduction

The entirety of Plaintiff's jurisdictional case against Magic Matrix rests on a single organic sale (into Utah) and two test purchases orchestrated by Plaintiff's own agents; a total of three transactions that, under controlling Seventh Circuit and Supreme Court authority, are legally insufficient to confer specific personal jurisdiction over a non-resident defendant. Plaintiff's fallback arguments are equally insufficient. Rule 4(k)(2) is not an independent jurisdictional hook available to a plaintiff who can already establish specific jurisdiction in at least one state, and Plaintiff's joinder argument ignores the mandatory severance requirements that govern multi-defendant trademark and counterfeiting actions. Magic Matrix's motion to dismiss should be granted.

## II. This Court lacks specific personal jurisdiction over Defendant

To establish specific personal jurisdiction over Magic Matrix, Plaintiff bears the burden of demonstrating that (1) Magic Matrix purposefully directed activities toward conducting business in Illinois, (2) Plaintiff's injury arises out of or relates to Magic Matrix's forum-related activities, and (3) the exercise of jurisdiction comports with traditional notions of fair play and substantial justice. *See Felland v. Clifton*, 682 F.3d 665, 673 (7th Cir. 2012). Plaintiff has satisfied none of these requirements.

### A. Magic Matrix did not purposefully direct activities toward conducting business in Illinois

A single organic sale (which occurred in Utah) and two Plaintiff-orchestrated test buys cannot establish purposefully directed activities. This three-transaction record is legally insufficient to establish that Magic Matrix purposefully availed itself of the Illinois market.

Regarding the test purchases, the Supreme Court's decision in *Walden v. Fiore* is dispositive. The Court held unanimously that "the plaintiff cannot be the only link between the

defendant and the forum." *Walden v. Fiore,* 571 U.S. 277, 285 (2014). Due process requires that specific jurisdiction be based on contacts "that the *defendant himself creates* with the forum State," not on the plaintiff's decision to send agents there to purchase products. *Id*. When Plaintiff's agents ordered products into Illinois for the specific purpose of creating jurisdictional contacts, those transactions were not the product of Magic Matrix's own purposeful direction of activity at Illinois. They were the product of Plaintiff's litigation strategy. Under *Walden*, these manufactured transactions cannot supply the constitutionally required connection between Magic Matrix and the forum.

Illinois district courts agree. In *Ouyeinc Ltd. v. Alucy*, the court recognized expressly that "[w]hen the court ruled on the original motion, plaintiff stated that the only sale to Illinois was made to plaintiff's investigator. Such a sale on its own is insufficient for purposes of personal jurisdiction." *Ouyeinc Ltd. v. Alucy*, 2021 WL 2633317, at *4 (N.D. Ill., 2021). The court further noted that "courts have repeatedly affirmed that a plaintiff cannot manufacture personal jurisdiction through their own conduct." *Id., see also Haggerty Enterprises, Inc. v. Lipan Indus. Co., Ltd.,* 2001 WL 968592, at *4 (N.D. Ill. 2001) (establishing that jurisdiction cannot be established through plaintiff-orchestrated purchases and quoting *Asahi Metal Industry Co., Ltd. v. Superior Court of California, Solano County,* 480 U.S. 102, 112 (1987), "Placement of a product into the stream of commerce, without more, is not an act of the defendant purposefully directed toward the forum State.").

Excluding the two test purchases leaves only one transaction, which occurred in Utah. Consequently, one of the two allegedly infringing products is no longer subject to this lawsuit, leaving the plaintiff with only a single work upon which to base their claim. Plaintiff attempts to sidestep this problem by pointing to the single, organic sale in Utah. Even if that sale occurred in

Illinois – which it did not – one sale, standing alone, does not automatically confer jurisdiction in this Circuit. The Seventh Circuit has cautioned that a single, isolated transaction may constitute precisely the kind of "random, fortuitous, or attenuated" contact that cannot support specific jurisdiction. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985). Critically, courts in this Circuit distinguish between out-of-state defendants who are sophisticated commercial operators deliberately targeting the Illinois market and those whose single Illinois transaction was incidental to broader business activity. *See, e.g., NBA Properties, Inc. v. HANWJH*, 46 F.4th 614 (7th Cir. 2022) (finding a single Amazon sale sufficient where the defendant was a commercial operator running a business through an online marketplace platform deliberately offering its products to Illinois consumers). For example, in *NBA Properties*, the claim was directed to counterfeit NBA merchandise that likely included Chicago Bulls merchandise that would implicitly be directed to Chicago Bulls fans in Illinois. Here, Plaintiff has offered no evidence that Defendant is a regular, systematic commercial operator targeting Illinois, no evidence of a broader pattern of Illinois sales, no evidence of targeted Illinois advertising, and no evidence of operational infrastructure directed at this forum.

### B. Plaintiff's alleged injury does not arise out of or relate to Defendant's forum-related activities

Even if this Court were to credit the three transactions as constituting some degree of forum contact, Plaintiff must still demonstrate that its alleged injury arises out of or relates to those forum-state contacts. *Bristol-Myers Squibb Co. v. Superior Court of California*, 582 U.S. 255, 262 (2017). There must be "an affiliation between the forum and the underlying controversy" and "[a] connection that is not just any defendant contact with the forum state, but one that directly relates to the claims at issue." *Id.*

Plaintiff has not made this showing. Her claims are predicated on nationwide or global counterfeiting and infringement activity. The jurisdictional contacts Plaintiff has identified are an infinitesimally small fraction of Magic Matrix's total business and do not meaningfully connect Magic Matrix's allegedly infringing conduct to Illinois in particular. Under the Seventh Circuit's reasoning in *Advanced Tactical Ordnance Systems, LLC v. Real Action Paintball, Inc*., 751 F.3d 796 (7th Cir. 2014), mere sales to forum-state customers are insufficient to establish personal jurisdiction absent a specific showing that those Illinois-based contacts have a causal connection to the alleged infringement harm. Plaintiff has made no such showing here.

### C. The exercise of jurisdiction does not comport with traditional notions of fair play and substantial justice

Additionally, exercising jurisdiction over Magic Matrix on this record would offend traditional notions of fair play and substantial justice. Once it has been decided that a defendant purposefully established minimum contacts within the forum State, these contacts may be considered in light of other factors to determine whether the assertion of personal jurisdiction would comport with "fair play and substantial justice." *International Shoe Co. v. Washington*, 326 U.S. 320 (1945). Thus, courts in "appropriate case[s]" may evaluate "the burden on the defendant," "the forum State's interest in adjudicating the dispute," "the plaintiff's interest in obtaining convenient and effective relief," "the interstate judicial system's interest in obtaining the most efficient resolution of controversies," and the "shared interest of the several States in furthering fundamental substantive social policies." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980). These considerations sometimes serve to establish the reasonableness of jurisdiction upon a lesser showing of minimum contacts than would otherwise be required. *Burger King Corp.,* 471 U.S. at 477.

Even if a court finds that a single, automated online sale constitutes technical "minimum contacts" with the forum state, the constitutional inquiry does not end there. Under the Due Process Clause, the exercise of personal jurisdiction must also comport with "traditional notions of fair play and substantial justice." *International Shoe*, 326 U.S. at 320. Where, as here, a plaintiff hales an out-of-state defendant into a distant forum over a single transaction of a consumer product worth roughly $20 to $30, the assertion of jurisdiction is fundamentally unreasonable and constitutionally impermissible.

The primary concern in any "fair play" analysis is the burden imposed on the defendant. Here, Magic Matrix is being forced to travel to a foreign jurisdiction and expend thousands of dollars in legal fees to defend against a claim centered on a single, $20–$30 t-shirt. The cost of defending this suit in this forum is disproportionate to the economic reality of the transaction by several orders of magnitude. Forcing Magic Matrix to incur substantial litigation expenses over a nominal consumer purchase is the very definition of a "severe burden" that makes defending the suit in Illinois highly unreasonable.

While a forum state generally has an interest in protecting its citizens from copyright infringement, that interest is virtually non-existent when the economic impact of the alleged infringement within the state are two test buys conducted by Plaintiff. Moreover, Plaintiff is not an Illinois citizen. As shown on her copyright registrations (Doc. 1-1), Friend is a citizen of the United Kingdom. So, this is a lawsuit brought by a United Kingdom citizen against a Chinese company in Illinois, which plainly has no connection to this dispute or the parties involved. The judicial resources of this Court should not be marshaled to resolve what is, in essence, a *de minimis* monetary dispute brought by a plaintiff who has no connection to Illinois. The state's

interest in regulating commerce and protecting intellectual property is not served by facilitating disproportionate, coercive litigation against isolated, out-of-state actors.

Allowing a plaintiff to establish personal jurisdiction based on a single, low-value transaction would essentially grant copyright holders nationwide, unchecked jurisdiction over any online merchant in the country. Because e-commerce platforms are accessible everywhere, any small seller who ships a single t-shirt to a buyer would be subject to suit in any of the 50 states. This would weaponize the jurisdictional framework, allowing plaintiffs to leverage the threat of exorbitant travel and substantial legal defense fees to force disproportionate settlements in low-value disputes.

In summary, a single, automated transaction for a \$20–\$30 consumer item – which occurred in Utah – does not establish any contact with Illinois. Nor do Plaintiff's test buys in Illinois confer personal jurisdiction. Requiring a foreign company to answer for a single Utah transaction in Illinois violates any sensible standard of "fair play and substantial justice." Because the constitutional burdens on the defendant heavily outweigh any nominal interest of the plaintiff or the forum state, this Court should decline to exercise personal jurisdiction.

### D. Rule 4(k)(2) does not supply an independent basis for jurisdiction over Magic Matrix and Plaintiff's reliance on it is misplaced.

To invoke Rule 4(k)(2), Plaintiff must demonstrate that Defendant purposefully directed its activities toward the United States. Plaintiff's entire jurisdictional evidentiary record rests on the broad, generalized statement that Defendant maintains "substantial" nationwide contacts via a U.S.-facing storefront. Plaintiff Opposition Brief (Doc. 81), p. 7.

Plaintiff's "evidence" consists entirely of systemic features inherent to third-party e-commerce platforms rather than any deliberate, unilateral targeting of the United States by the

Defendant. Operating a globally accessible storefront does not constitute purposeful availment under the Due Process Clause.

Under *Walden v. Fiore*, personal jurisdiction must arise out of contacts that the "defendant *himself*" creates with the forum. *Walden,* 571 U.S. at 284. A foreign seller utilizing a third-party platform cannot control and therefore have purposefully directed the platform's default layout, language, currency, or payment gateways. The fact that a storefront is viewable in English and prices items in USD, while also being viewable in other languages and accepting other currency, simply reflects the global reach of these websites. Making a product *available* to a market is constitutionally distinct from *targeting* a market.

Plaintiff attempts to distract the Court with large, unrelated numbers—asserting that Defendant offers "10,000 products" and processed "$1 million in customer payments." This argument fails both legally and logically. Under Rule 4(k)(2), the specific jurisdiction inquiry requires that the litigation "arise out of or relate to" the defendant's contacts with the forum. The vast majority of the "10,000 products" and "$1 million in payments" have absolutely nothing to do with the "Accused Shirts," which only total approximately $100 if you include the two test buys.[1] Plaintiff cannot aggregate unrelated, non-infringing global sales to jurisdiction over a specific copyright claim.

Without evidence that Defendant targeted U.S. consumers through active marketing, local advertising, or a regular, non-isolated course of business specifically directed at the United States, a single automated transaction completed through a third-party intermediary is constitutionally insufficient to support specific personal jurisdiction.

[1] Plaintiff does not allege that Defendants are subject to general jurisdiction, rendering sales of non-accused products irrelevant.

## III. Plaintiff has improperly joined 34 unrelated and independent defendants in a single action, and this Court should dismiss the claims against Magic Matrix

Federal Rule of Civil Procedure 20(a)(2) permits joinder of multiple defendants only where: (1) the claims against them arise out of the same transaction, occurrence, or series of transactions or occurrences; and (2) a question of law or fact common to all defendants will arise in the action. Both requirements must be satisfied. Fed. R. Civ. P. 20(a)(2). Although district courts possess substantial discretion in determining whether joinder is appropriate, Rule 20 does not permit unrelated defendants to be grouped together merely because they are alleged to have committed similar acts of infringement. See *UWM Student Ass'n v. Lovell*, 888 F.3d 854, 863 (7th Cir. 2018). Despite this, Plaintiff relies only upon "similar acts of infringement" to justify joinder of the unrelated defendants in this case. Plaintiff Brief (Doc. 81), pg. 9 ("The claims also share common questions: whether each use infringes Friend's works, whether it was willful, and what remedies apply…").

Plaintiff's argument rests on a fundamental logical and legal fallacy: she contends that because Defendant Nos. 28 and 29 are operated by a single entity, Plaintiff has somehow satisfied her burden to show a "common operation" or "coordinated scheme" among all 34 entirely unrelated defendants listed on Schedule A. Moreover, Plaintiff has alleged infringement of 13 different copyrights, only two of which are alleged with respect to Magic Matrix.

This "guilt-by-association" logic directly contradicts the requirements of Federal Rule of Civil Procedure 20(a)(2). A single exception does not prove the rule, and admitting that two storefronts are the same actor does not establish that the remaining dozens of independent online merchants are acting in concert. Operating two storefronts under one company does not link that company to the completely separate, independent sales made by the dozens of other, unrelated competitors on different days, through different accounts, and under different business entities.

If anything, the fact that Defendant Nos. 28 and 29 are the same entity exposes the Plaintiff's shotgun approach to filing Schedule A lawsuits. Plaintiff sued "Defendant 28" and "Defendant 29" as if they were entirely separate, conspiratorial wrongdoers. Now that Magic Matrix has clarified that these two storefronts are actually just one single legal entity, Plaintiff attempts to spin its own duplicate naming of the same defendant as "proof" of a vast, coordinated network. In reality, it proves that Plaintiff performed little to no individualized pre-suit investigation to determine who they were suing before dumping dozens of independent online storefronts into a single, massive complaint to avoid paying multiple filing fees and to reduce Plaintiff's workload.

There is zero evidence in the record showing a shared distribution network between Magic Matrix and the other 32 defendants, any communication or administrative connection between the storefronts, or any overlapping financial accounts or shared business registries. Without these concrete, horizontal links, the other 32 storefronts remain independent actors. Joining them in a single action violates Rule 20, prejudices Magic Matrix, and deprives the Court of its required filing fees. Still further, only two of the thirteen copyright registrations are at issue with respect to Magic Matrix. Any infringement claims arising from the other eleven copyright registrations plainly do not arise from the same transaction or occurrence.

Finally, Plaintiff plays a game of semantics, arguing that "dismissal" is not a remedy for misjoinder, where Rule 21 states that the Court may "drop" a party for misjoinder. The Seventh Circuit has recognized that "[t]he remedy for misjoinder of otherwise proper claims is severance or dismissal without prejudice." *UWM Student Ass'n*, 888 F.3d at 863. Thus, dismissal of the complaint without prejudice with respect to Defendants 28 and 29 is an available and appropriate remedy here.

## IV. Conclusion

For the foregoing reasons, Magic Matrix Technology Co. Ltd., on behalf of Defendants 28 and 29 with the aliases "favomens.com," and "lacemylife.com," respectfully requests that the Court dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction. In the alternative, because Plaintiff has improperly joined Magic Matrix with 32 other, unrelated defendants in a single action, the Court should sever and dismiss the claims against Magic Matrix pursuant to Rules 20 and 21.

Dated: July 27, 2026

s/Michael T. Griggs

Michael T. Griggs
BOYLE FREDRICKSON S.C.
840 N. Plankinton Ave.
Milwaukee, WI 53203
mtg@boylefred.com

***Attorney for Defendants 28 and 29***